758 S.E.2d 708

**In the Matter of Bruce Robert HOFFMAN, Respondent.**

Appellate Case No. 2014–000735.

No. 27388.

Supreme Court of South Carolina.

Submitted May 6, 2014.

Decided May 28, 2014.

Lesley M. Coggiola, Disciplinary Counsel, and Sabrina C. Todd, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Harvey MacLure Watson, III, Esquire, of Ballard Watson Weissenstein of West Columbia, for respondent.

PER CURIAM.

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, respondent admits misconduct and consents to the imposition of an admonition or public reprimand with other conditions. We accept the Agreement and issue a public reprimand with conditions as discussed hereafter. The facts, as set forth in the Agreement, are as follows.

### *Facts*

Respondent was hired by a family friend to assist with the administration of a trust. Respondent performed some services before entering into a formal fee agreement. In the written fee agreement, Client agreed to pay respondent $300 per hour and respondent required Client to provide a $5,000 retainer which respondent referred to as an initial deposit. The fee agreement stated "[t]his initial deposit is nonrefundable, paid in exchange for the Attorney's agreement to represent Client."

Respondent deposited Client's check into his trust account on a Friday and transferred the entire $5,000 from the

account the following Monday. Respondent acknowledges this withdrawal was improper because he had not yet earned the entire $5,000 and his fee agreement was insufficient for him to treat the funds as an advanced fee earned upon receipt under Rule 1.5(f), RPC, Rule 407, SCACR. However, respondent submits he was unaware of the requirements of Rule 1.5(f) because that portion of the rule had become effective only weeks before the fee agreement was executed. At the time of his withdrawal, respondent believed he was entitled to remove the entire $5,000 because his fee agreement with Client clearly identified the sum as "nonrefundable."

On Tuesday, Client's check was returned for insufficient funds. The bank reported to the Commission on Lawyer Conduct (the Commission) that a $5,000 item was presented on respondent's trust account against insufficient funds. The Commission referred the bank's report to ODC for an investigation.

Client was traveling when she learned her check to respondent was dishonored. She had her husband send respondent a $3,000 payment to respondent's PayPal account which she believed would leave her "significantly ahead in payments." When she arrived home, Client requested respondent provide an invoice of the work performed to date so she would know where she stood on payments. Respondent expressed dismay at the request and indicated he would not have time to prepare an invoice until after a specific date. By that date, Client decided she did not need any further assistance from respondent.

After the date passed, Client made a second request for an invoice and asked for a refund of any unearned fees. Respondent sent Client an invoice via email. The invoice was not itemized but indicated that, including the time he spent dealing with the "fallout" of her dishonored check, he had performed ten hours of work and thus earned $3,000. However, respondent claimed that he was entitled to receive the full $5,000 initial deposit plus a $30 statutory service charge for the dishonored check and the fees PayPal charged him for the payment from Client's husband. Additionally, respondent only gave Client credit for the net amount he received from PayPal, thus resulting in Client being charged the PayPal fees

twice. In his accompanying email, respondent indicated Client was subject to criminal prosecution and a $500 penalty for writing a bad check. Respondent closed the email by stating, "I don't expect to hear from you about this again, but reserve all my rights in the event I do."

In responding to the Notice of Investigation, respondent attempted to show that his trust account was never overdrawn and that the bank's report was erroneous. Respondent explained that, before depositing Client's check, the account balance was $7,351 and, of this amount, $7,200 was earned fees he had not withdrawn from the trust account.

Respondent did not provide all of the records requested in the Notice of Investigation and did not fully comply with two further requests for information and documentation. Respondent was unable to produce the requested records because he was not maintaining the financial records required by Rule 417, SCACR. However, he did not explain the reason for his failure to produce the records, triggering ODC to issue a subpoena for one year of trust account records and to schedule his interview.

In response to the subpoena, respondent was only able to produce bank statements for the account in question. The bank statements included images of the front of his canceled checks but those images were insufficient in size and image quality to be legible. Respondent acknowledges he failed to create and maintain many of the other records required by Rule 417, SCACR, including a receipt and disbursement journal, client ledgers, accountings, reconciliation reports, trial balances, and legible images of the front and back of canceled checks.

During his interview with ODC, respondent explained he did not maintain these records because he believed that, based on the minimal volume of transactions in his trust account, he would be able to sufficiently recall particular transactions by memory if necessary. Respondent notes he had exclusive control and access to the account, but admits he was unable to identify specific transactions involving his trust account when asked for details during his interview.

When asked about the $7,200 he had in his trust account when he deposited Client's check, respondent stated most or

all of that sum constituted earned legal fees for a particular client and that he had left the fees in the account for at least sixty days. Respondent explained he had the money earmarked for a specific purpose and was using the account like a savings account. He admitted he had no operating account and would sometimes deposit his own funds into the trust account in order to advance costs on a case.

Since the investigation by ODC began, respondent has opened a separate operating account and completed a trust accounting course accredited by the South Carolina Bar.

## *Law*

■ Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.5 (lawyer shall not charge unreasonable fee); Rule 1.15 (lawyer shall safeguard client funds; absent advance fee agreement, lawyer shall deposit unearned fees into trust account and withdraw funds only when earned; lawyer shall not commingle personal funds with funds of clients and third parties); Rule 4.5 (lawyer shall not threaten criminal prosecution solely to obtain advantage in civil matter); and Rule 8.1(b) (lawyer shall not knowingly fail to respond to lawful demand for information from disciplinary authority). In addition, respondent admits he failed to maintain proper records pertaining to his trust account as required by Rule 417, SCACR.

Respondent also admits his conduct constitutes grounds for discipline under the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct or other rules of this jurisdiction regarding professional conduct of lawyers) and Rule 7(a)(3) (it shall be ground for discipline for lawyer to knowingly fail to respond to lawful demand from disciplinary authority).

## *Conclusion*

■ We find respondent's misconduct warrants a public reprimand.[1] In addition, respondent shall pay the costs in-

1. Respondent's disciplinary history includes an admonition issued in 2001. Rule 7(b)(4), RLDE (admonition may be used in subsequent

curred in the investigation and prosecution of this matter by ODC and the Commission within thirty (30) days of the date of this order. Within six (6) months of the date of this order, respondent shall complete the South Carolina Bar's Legal Ethics and Practice Program. Further, for one (1) year from the date of this order, respondent shall file copies of the following trust account(s) records with the Commission: monthly reconciliation reports with a list of outstanding items; trial balance reports; active client ledgers; bank statements; front and back images of canceled checks; deposit records including images of items of deposit; and records of electronic transfers. Accordingly, we accept the Agreement and publicly reprimand respondent for his misconduct.

**PUBLIC REPRIMAND.**

BEATTY, J., not participating.

proceedings as evidence of prior misconduct solely upon issue of sanction to be imposed).